Filed 11/17/14  Wilson v. Autler CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| LARRY WILSON, | |
|     Plaintiff and Respondent, | E057218 |
|   v. | (Super.Ct.No. RIC1108021) |
| CAROLE AUTLER et al., | **OPINION** |
|     Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Ronald L. Taylor, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).  Affirmed as modified.

Carole Autler and Brent Autler, Defendants and Appellants in pro. per.

Law Office of Michael Geller and Michael S. Geller for Plaintiff and Respondent.

Larry Wilson has an express written easement over property owned by Carole Autler for the purpose of access to his own property.  For the last 18 years, Wilson and

1

Autler have been in more or less constant litigation over this easement. In February 2010, a trial court quieted title to the easement in Wilson. Nevertheless, by May 2011, they were back in court when Wilson filed this action against Autler,[1] asserting causes of action for enforcement of the easement and for private nuisance. During a bench trial, Autler admitted intentionally blocking the easement. The trial court entered judgment in favor of Wilson and against Autler, awarding Wilson $18,600 in actual damages and $50,000 in punitive damages and enjoining Autler from blocking the easement.

Autler appeals. She contends:

1. Wilson's claims are barred by the statute of limitations.

2. Wilson's claims are barred by res judicata.

3. Autler's acts were done under authority of statute and therefore cannot be found to be a private nuisance.

4. There was insufficient evidence of a private nuisance.

5. Wilson failed to mitigate damages.

6. There was insufficient evidence to support punitive damages.

7. There was no basis for attorney fees.

We do agree that there was insufficient evidence of Autler's financial condition to support the award of punitive damages. Otherwise, Autler has not shown any error.

---

[1] Autler's husband, Brent Autler, was also named as a defendant. However, he has no interest in the property subject to the easement. His only involvement consisted of allegedly helping Autler to block the easement. He has joined in Autler's briefs. Accordingly, we will not discuss him separately from Autler.

Accordingly, we will strike the award of punitive damages, and we will affirm the judgment as thus modified.

## I

## FACTUAL BACKGROUND

An appellant's opening brief must "[p]rovide a summary of the significant facts limited to matters in the record." (Cal. Rules of Court, rule 8.204(2)(C).) Every brief must also "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(1)(C).)

Autler's brief wholly lacks anything that could be considered a statement of facts. It does have a short section entitled "Statement of the Case" (capitalization altered), but that avoids ever actually explaining what the case is about. It simply outlines the creation of the easement — without any citation to the record — and then says, "There became a controversy over the use of the easement."[2]

The rest of Autler's brief presumes that the court is somehow familiar with the facts of the case, referring to such concepts as "the well" and "lot 11" with no explanation. It does state a handful of facts, albeit belatedly, and it does cite them to the record; however, these facts are cherry-picked and out of context.

---

[2]    In light of the 18 years of litigation between the parties, this is a masterpiece of understatement.

"An appellant must fairly set forth all the significant facts, not just those beneficial to the appellant. [Citation.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 402.) "An appealed judgment is presumed correct, and the appellant must affirmatively demonstrate error. [Citation.] An appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law. [Citations.] An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient. The fact that there was substantial evidence in the record to support a contrary finding does not compel the conclusion that there was no substantial evidence to support the judgment. An appellant . . . who cites and discusses only evidence in her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment. [Citations.]" (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.)

Wilson, too, has chosen not to provide a statement of facts. We recognize that, as the respondent, he is not required to provide one. We merely note that both sides have implicitly agreed that an overall statement of facts is not necessary to our decision. (See *Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379 ["Because '[t]here is no duty on this court to search the record for evidence' [citation], an appellate court *may* disregard any factual contention not supported by a proper citation to the record [citations]."].)

## II

## WILSON'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

Autler contends that Wilson's claims were barred by the statute of limitations.

In her answer, Autler alleged that Wilson's claims were barred by the statute of limitations, and she cited Code of Civil Procedure section 338.  She also argued the statute of limitations in her closing.

The trial court did not expressly rule on the statute of limitations issue.  However, by finding in Wilson's favor, it implicitly found that his claims were not time-barred. (See *Natkin v. California Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1013; see also *Baxter v. Peterson* (2007) 150 Cal.App.4th 673, 676.)  We must uphold this finding if it is supported by substantial evidence.  (See *People v. Le* (2000) 82 Cal.App.4th 1352, 1361.)

Because the substantial evidence standard applies, Autler has forfeited this contention by failing to summarize the relevant evidence fully and fairly.  (See part I, *ante*.)

Separately and alternatively, however, we conclude that there was substantial evidence that the statute of limitations had not run.

"A nuisance claim alleging damage to real property is subject to the three-year limitation provided by [Code of Civil Procedure] section 338, subdivision (b). [Citation.]"  (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 979.)

" . . . California law distinguishes between continuing and permanent nuisances." (*McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 84.) "'[T]he crucial test of the permanency of a . . . nuisance is whether the . . . nuisance can be discontinued or abated.' [Citation.]" (*Mangini v. Aerojet-General Corp.* (1996) 12 Cal.4th 1087, 1097.) "'[A]batable' means that the nuisance can be remedied at a reasonable cost by reasonable means." (*Id*. at p. 1103.)

"If a nuisance is permanent, 'the plaintiff must bring one action for past, present and future damage within three years after the creation of the permanent nuisance. [Citation.]' [Citation.] However, if a nuisance is continuing, the 'persons harmed by it may bring successive actions for damages until the nuisance is abated. [Citation.]' [Citation.]" (*Shamsian v. Atlantic Richfield Co.*, *supra*, 107 Cal.App.4th at p. 979.)

According to Autler, she has obstructed the easement with a "power pole, trees, fences and gates . . . ." Even in the absence of any additional evidence, it is fairly inferable that, if Autler was able to put in the power pole, trees, fences, and gates, she could also take them out.

But there *was* additional evidence. David Slawson, an expert surveyor, testified that the power pole was a "private" pole and "could be taken out[.]" In his opinion, the trees, including a palm tree, "would be rather difficult to take down." Nevertheless, it is a matter of common knowledge that trees can be removed for a few thousand dollars. The trial court found that Wilson had actual damages of $18,600. In addition, Wilson testified that he had spent over $560,000 in legal fees in litigation with Autler. The trial

6

court could find that a few thousand dollars to clear the easement was eminently reasonable.

Because the trial court could reasonably find that the nuisance was continuing, it could also reasonably find that the statute of limitations had not run.

III

WILSON'S CLAIMS ARE NOT BARRED BY RES JUDICATA

Autler contends that the dismissal of Wilson's cross-complaint in a previous action is res judicata.

A.    *Additional Factual and Procedural Background*.

In her answer, Autler alleged as an affirmative defense that Wilson's claims were barred by res judicata.

The following facts were shown either by exhibits introduced at trial or by matters of which the trial court took judicial notice.

In a prior action, case No. RIC 443264, Autler sued Wilson to quiet title to the easement. Wilson cross-complained for, among other things, private nuisance and interference with the easement.

In a statement of decision, the trial court ruled in favor of Wilson on the complaint; however, it found that he had "abandoned" his cross-complaint. Wilson objected, and the trial court allowed him to dismiss his cross-complaint instead. The

7

minute order of the hearing states that the cross-complaint was dismissed "with prejudice."**[3]**

    B.    *Analysis*.

Once again, the trial court did not expressly rule on the res judicata issue; however, by ruling in favor of Wilson, it implicitly found that res judicata did not apply.

As discussed earlier (see part II, *ante*), a nuisance may be permanent or continuing. This classification has ramifications not only for the statute of limitations, but also for res judicata. When a nuisance is permanent, a prior action to abate the nuisance is res judicata. However, when a nuisance is continuing, as already mentioned, the plaintiff is allowed to bring successive actions for damages until the nuisance is abated (*Shamsian v. Atlantic Richfield Co.*, *supra*, 107 Cal.App.4th at p. 979); the prior actions are not res judicata. (See *Spaulding v. Cameron* (1952) 38 Cal.2d 265, 268 ["[I]f the plaintiff assumes [a nuisance] is not permanent and sues only for past damages, he may be met with the plea of res judicata in a later action for additional injury if the court then decides the nuisance was permanent in character from its inception."].)

Once again, Autler has forfeited this contention by failing to discuss the relevant evidence fully and fairly.

---

    **3**    A reporter's transcript of the same hearing, which gives some indication that the cross-complaint was dismissed *without* prejudice, is in the record in connection with a demurrer, but it was never introduced at trial.

And, again, separately and alternatively, we have already found substantial evidence that the nuisance was continuing. (See part II, *ante*.) Thus, the trial court could properly conclude that res judicata did not apply.

IV

AUTLER'S ACTS WERE NOT DONE UNDER AUTHORITY OF STATUTE

Autler relies on Civil Code section 3482, which provides: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." She notes that there is statutory authority for adverse possession. (Civ. Code, § 1007; Code Civ. Proc., § 321.) She concludes that blocking an easement for the purpose of obtaining title by adverse possession cannot constitute a private nuisance.

The problem with this argument is that what the adverse possession statutes "authorize" is possession of the real property of another *for five years or more*. A person in possession of the real property of another for *less* than five years acts at his or her own risk.

To put it another way, the legislative intent in enacting adverse possession statutes was not to encourage people to go around grabbing other people's land; rather, it was — for various reasons — to treat some long-past grabbings as faits accomplis. (See generally Stake, *The Uneasy Case for Adverse Possession* (2001) 89 Geo. L.J. 2419.) "[The] requirement of 'express' authorization embodied in [Civil Code section 3482] itself insures that an unequivocal legislative intent to sanction a nuisance will be effectuated, while avoiding the uncertainty that would result were every generally worded

9

statute a source of undetermined immunity from nuisance liability." (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 291, fn. omitted.) We find no such legislative intent.

The adverse possession statutes work much like a statute of limitations. Under Autler's logic, the very existence of a statute of limitations on a cause of action for a private nuisance would "authorize" the maintenance of a nuisance for as long as it takes for the statute to run. This would abrogate nuisance law entirely.

We therefore conclude that Autler did not act "under the express authority of a statute" within the meaning of Civil Code section 3482.

V

AUTLER HAS NOT SHOWN THAT THERE WAS

INSUFFICIENT EVIDENCE OF A PRIVATE NUISANCE

Autler contends that Wilson failed to prove a private nuisance.

Yet again, we reject this contention because Autler has not fully and fairly summarized the relevant evidence. (See part I, *ante*.)

VI

WILSON DID NOT FAIL TO MITIGATE DAMAGES

Autler contends that Wilson failed to mitigate his damages, "if any." (Capitalization altered.)

Autler pleaded failure to mitigate damages as an affirmative defense. She also argued in her closing that Wilson had failed to mitigate damages.

10

"[A] plaintiff cannot be compensated for damages that were not incurred or could have been mitigated by reasonable effort or expenditures. [Citation.] Whether a plaintiff acted reasonably to mitigate damages, however, is a factual matter to be determined by the trier of fact, and is reviewed under the substantial evidence test. [Citation.] The burden of proving a plaintiff failed to mitigate damages, however, is on the defendant, not the other way around. [Citations.]" (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867, 884.)

Yet again, because the substantial evidence test applies, Autler has forfeited this argument by failing to summarize the evidence fully and fairly. (See part I, *ante*.)

Separately and alternatively, we also reject this argument on the merits. Autler's argument seems to be twofold: (1) Wilson had a potential alternate route to his property, but he failed to improve that route so as to make it usable; and (2) Wilson was seeking lost rental damages on the theory that he could not rent out a mobilehome on his property for four years because Autler was blocking the easement, yet the mobilehome had been rented out for the previous seven years.

Regarding the alternate route, the evidence showed that Wilson's lot (lot 10) could be reached either by the easement or by a narrow, muddy path over a separate lot (lot 11) that Wilson also owned. Wilson testified that he did not improve the path over lot 11 because lot 11 was "a separate entity. I could sell that lot as an individual lot, and if I put an easement through that, then I destroy the value of that particular piece of property." "If I establish that [path] as a way to get to Lot 10, and I sold Lot 10, I still have to give

11

[the buyer] an easement through Lot 11 . . . , and I already have an easement through [Autler's property] to get to Lot 10." The trial court could find that this was reasonable.

We also note that Autler did not introduce any evidence of what it would have cost to improve the path over lot 11. Thus, the trial court was not required to conclude that improving the path would actually have mitigated Wilson's damages.

Regarding rental of the mobilehome, the evidence showed that in 2001, during a truce with Autler, when Wilson was able to use the easement, he rented the mobilehome to a couple named Burkett. On an unspecified date, the truce fell apart, so that Wilson — and the Burketts — were no longer able to use the easement. Nevertheless, the Burketts did not move out until 2008. Thereafter, Wilson showed the mobilehome to potential lessees, and even offered below-market rent, but they declined to rent due to lack of access.

Autler claims that the fact that the Burketts stayed in the mobilehome was proof that Wilson could have rented it out. Not so. It is unclear how long they stayed in the mobilehome after the truce ended and they lost the use of the easement. Also, the Burketts were not similarly situated to a new tenant; they may simply have been reluctant to move. Or they could have had reasons peculiar to them to stay, despite lack of access. Wilson attempted to testify to the Burketts' actual reasons for staying, but Autler objected based on hearsay, and the trial court sustained her objection. The problem is that *Autler* had the burden of proving failure to mitigate damages. Absent any evidence as to the

12

Burketts' *reasons* for staying, and thus absent any evidence that they also applied to new tenants, the trial court could find that she failed to meet her burden.

We therefore conclude that the trial court properly rejected Autler's failure-to-mitigate defense.

VII

THERE WAS INSUFFICIENT EVIDENCE OF AUTLER'S

FINANCIAL CONDITION TO SUPPORT PUNITIVE DAMAGES

Autler contends that there was insufficient evidence to support punitive damages, in two respects. First, she contends that there was insufficient evidence of malice or oppression. Second, she contends that there was insufficient evidence of her financial condition. We agree that there was insufficient evidence of her financial condition. Accordingly, we need not discuss the evidence of malice or oppression.

"'[A]n award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition.' [Citation.] 'Without such evidence, a reviewing court can only speculate as to whether the award is appropriate or excessive.' [Citation.] Plaintiff bears the burden of proof. [Citation.]

"The [Supreme C]ourt . . . [has] declined 'to prescribe any rigid standard for measuring a defendant's ability to pay.' Net worth is the most common measure, but not the exclusive measure. [Citations.] . . . 'What is required is evidence of the defendant's ability to pay the damage award.' [Citation.] Thus, there should be some evidence of the defendant's actual wealth. Normally, evidence of liabilities should accompany evidence

of assets, and evidence of expenses should accompany evidence of income." (*Baxter v. Peterson*, *supra*, 150 Cal.App.4th at p. 680.)

In this instance, Autler summarizes the material evidence correctly (if tersely) by noting that no financial records were presented. Wilson points to Autler's testimony that she owned her house and had paid cash for it out of an inheritance. However, there was no evidence of the value of the house, no evidence of Autler's other assets and liabilities, and no evidence of her income and expenses. Hence, we can get no sense of her "actual wealth."

*Baxter v. Peterson*, *supra*, 150 Cal.App.4th 673 reversed an award of $75,000 in punitive damages, despite evidence that the defendant owned "substantial assets," including at least seven single-family homes and two multi-family residences, because there was no evidence of her liabilities. (*Id.* at p. 681.) Here, there is even less evidence of Autler's net worth.[4]

The procedures for obtaining evidence of a defendant's financial condition are straightforward. If the plaintiff can establish a substantial probability that it will prevail on a claim for punitive damages, it can obtain pretrial discovery of the defendant's financial condition. (Civ. Code, § 3295, subd. (c).) If not, the plaintiff can still "subpoena documents or witnesses to be available at the trial for the purpose of establishing the . . . [defendant's] financial condition . . . , and the defendant may be

---

[4] A fortiori, there was insufficient evidence of Brent Autler's financial condition.

14

required to identify documents in the defendant's possession which are relevant and admissible for that purpose and the witnesses employed by or related to the defendant who would be most competent to testify to those facts." (*Ibid*.) There is no indication that Wilson took advantage of this procedure. There is also no indication that Autler tried to evade these procedures or to conceal her assets. (Cf. *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1337-1338; *Green v. Laibco, LLC* (2011) 192 Cal.App.4th 441, 453-454.) Accordingly, there is no reason to excuse Wilson from presenting additional evidence of Autler's financial condition.

"When a punitive damage award is reversed based on the insufficiency of the evidence, no retrial of the issue is required. [Citation.]" (*Baxter v. Peterson*, *supra*, 150 Cal.App.4th at p. 681.) We will modify the judgment by striking the award of punitive damages.

## VIII

### THE TRIAL COURT DID NOT AWARD ATTORNEY FEES

Autler contends that "there [wa]s no basis to award attorney fees." (Capitalization altered.) The judgment purported to award attorney fees "by motion." (Capitalization altered.) Wilson did bring a motion for attorney fees, but the trial court denied it. Hence, we do not discuss this contention any further.

## IX

## DISPOSITION

The award of $50,000 in punitive damages is stricken.  As thus modified, the judgment is affirmed.  Plaintiff is awarded costs on appeal against defendants.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.

16